United States District Court
Southern District of Texas
**ENTERED**
August 11, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES LEROY FRATTAROLA, | § | |
| TDCJ #02204270, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-21-2895 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Petitioner James Leroy Frattarola (TDCJ #02204270) filed this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction and sentence (Doc. No. 1). He also filed a Memorandum in Support of his petition (Doc. No. 4). The Respondent filed an Answer with the state court records (Doc. Nos. 11, 12). Frattarola recently filed a Motion to Amend his petition. Doc. No. 16. The Court has carefully considered the petition and memorandum in support, the answer, court records, motion to amend, and applicable law and concludes that this petition must be DISMISSED for the reasons that follow.

## I.  Background

James Leroy Frattarola ("Frattarola" or "Jimmy") moved in with his friend, Michael Charles Hamilton ("Hamilton"), and

Hamilton's family in a small apartment in Baytown, Texas, around April or May 2016.[1]   Hamilton and his wife, Allison Williams Hamilton ("Allison"), lived there with Allison's teenage son, Dominick, and her then-six-year-old daughter, M.P.[2]   Hamilton and Allison slept in one bedroom, Dominick slept in the other bedroom, and Frattarola and M.P. slept on the two couches in the living room.[3]   This arrangement continued until early December 2016, when the family was evicted from that apartment after Allison lost her job.[4]   Family friends Roy and Nadine, who lived downstairs and "catty-corner" to Allison and Hamilton in the same apartment complex, allowed Allison, Hamilton, Dominick, M.P., and Frattarola to stay with them until they made other arrangements.[5]   This arrangement soon ended, however, because Roy and Nadine were also evicted from their apartment in December 2016.[6]

---

[1] Doc. No. 12-5 at 55-56, Reporter's Record ("RR") Vol. III at 55-56.
[2] Id. at 40.  M.P. was born on November 1, 2009, making her 6 years old in May 2016, 7 years old when she made her outcry, and 8 years old at trial.  Id. at 36.
[3] Id. at 41.
[4] Id. at 38.
[5] Id.
[6] It appears that the family stayed with Roy and Nadine during the first part of December 2016.  According to Allison, Frattarola also moved in with Roy and Nadine in early December 2016, but she had not heard from him since the mid-December night when M.P. made her outcry. Id. at 53-54; 55, 56.  She testified that when Roy and Nadine were evicted soon after M.P. made her outcry, Allison and her family again moved in December 2016, this time into her mother's house.  Id. at 76. At Frattarola's trial in June 2018, M.P. testified that she lived with her grandmother, mother, Hamilton, Dominick, and two uncles.  Id. at 91-92.

Soon after the family moved in with Roy and Nadine in early December, M.P. complained to her mother of a rash or sore on the side of her leg near her bottom, and Allison put cream on it.[7] M.P. had to take her pants off for this, and while Allison was putting cream on M.P., M.P. was acting "funny" and wanted Allison to "hurry up."[8] Allison wondered why her daughter was acting strangely and asked her if anyone had touched her private area, which they referred to as her "business."[9] M.P. was agitated and afraid that she would get in trouble, and Allison assured her that she would not be in trouble and to tell her who touched her.[10] M.P. told Allison that Jimmy grabbed her foot to touch and rub his "business" to ejaculate.[11] M.P. said that this happened in the first apartment, in the living room while the others were sleeping and in the walk-in closet in her brother's bedroom when the others were away.[12] She also stated that nothing happened in Roy and Nadine's apartment and that everything took place in the previous apartment.[13] Allison

---

[7] Id. at 43.
[8] Id. at 44.
[9] Id.
[10] Id. at 44-45.
[11] Id. at 45. M.P. used a slang term to refer to what happened with the sexual contact.
[12] Id. at 47-48.
[13] Id. at 12.

stated that M.P. was shaking, crying, and upset during her outcry.[14]

Allison contacted a family member who is in law enforcement and then followed up with the Baytown Police Department.[15] She took M.P. to the Child Assessment Center, where Dr. Lauren Burge, a pediatrician specializing in childhood sexual abuse, conducted a medical examination and wrote the medical report. Lisa Holcombe, a forensic interviewer, also interviewed M.P. regarding what happened.

On August 24, 2017, a Texas grand jury issued an indictment charging Frattarola with indecency with a child by contact in the 248th Judicial District Court of Harris County, Texas in cause number 1546144:

> [T]hat in Harris County, Texas, JAMES LEROY FRATTAROLA, hereinafter styled the Defendant, heretofore on or about April 1, 2016, did then and there unlawfully, cause M.P., a person younger than seventeen years of age, to engage in sexual contact, namely by touching the Complainant's foot of M.P. with the genitals of the Defendant with the intent to arouse or gratify the sexual desire of James Leroy Frattarola.

Doc. No. 12-22 at 124, SHCR at 000121.

On the first day of trial, outside the presence of the

---

[14] Id. at 45.

[15] Baytown Police Department Officer Joseph Mason testified that on the evening of December 14, 2016, he was dispatched to a sexual assault on 2900 West Baker Road apartment complex. Id. at 30. He stated that he went to apartment 2301 (the apartment of Roy and Nadine), and talked to Allison, M.P., Hamilton, Dominick, and their two roommates, Roy and Nadine. Id.

Jury, the court heard argument on the defense motion regarding the admissibility of the hearsay statement of M.P. as provided by Allison, the outcry witness.[16]   Allison testified regarding how the outcry occurred and that she was the first adult person to whom M.P. made her outcry.   The trial court found that M.P.'s statement to Allison was reliable and that Allison was available to testify as the outcry witness.[17]

At that pre-trial hearing, Defense counsel, Lucinda Marshall ("Marshall"), objected to testimony alleging that Frattarola showed pornography to M.P. in the closet.   She also objected to other extraneous acts alleged to have occurred between M.P. and Frattarola, and the trial judge noted that she would make a ruling when the testimony was presented and stated that if it was part of the offense that was committed, it would be admissible.[18]   Marshall further requested that the prosecution be instructed not to raise any extraneous offenses until the court had a chance to make a ruling on the objection.[19]   The trial court granted defense counsel's request and so instructed the prosecution, stating that only acts related to the offense on trial would be admissible.[20]

---

[16] *See* Doc. No. 12-5 at 6, RR III at 6-15.
[17] Id. at 15.
[18] Id. at 18.
[19] Id.
[20] Id.

At trial, the State presented testimony from Baytown Police Department Officer Joseph Mason; Allison (mother of the complainant); M.P. (complainant); Lisa Holcombe, the forensic interviewer; Michael Hamilton, M.P.'s stepfather; Dr. Lauren Burge; and Baytown Police Detective Lance Watkins.

The Jury returned a guilty verdict on June 20, 2018, for the offense of indecency with a child by contact and sentenced Frattarola to eighteen years' imprisonment.[21]  The state intermediate appellate court affirmed his conviction on appeal, Frattarola v. State, No. 14-18-00525-CR, 2019 WL 3956170 (Tex. App. — Houston [14th Dist.] Aug. 22, 2019, pet. ref'd), and the Texas Court of Criminal Appeals refused his petition for discretionary review, Frattarola v. State, PD-1086-19 (Tex. Crim. App. Dec. 11, 2019).

Frattarola filed a state application for habeas corpus that the Texas Court of Criminal Appeals denied without written order on June 2, 2021.[22]  In this federal petition, Frattarola asserts fourteen grounds for relief, including three grounds related to due process violations by the prosecution (alleging a Brady

---

[21] See Doc. No. 12-22 at 130, State Habeas Corpus Record ("SHCR") at 127, Judgment of Conviction by Jury. Citations following "Doc. No.---" reflect the Clerk's pagination as stamped by the CM/ECF system; citations to state court records otherwise reflect the pagination according to the Bates stamp on the bottom of the page of those records.
[22] Doc. No. 12-20 at 1, WR-92,630-01, at Action Taken Sheet.

violation,[23] a Confrontation Clause issue, and the presentation of a "medically insane" outcry witness) and eleven grounds claiming ineffective assistance of counsel regarding his trial counsel's performance in his case.[24]

## II.  Legal Standard

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See* Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions").  The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review.  Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)."  Harrington, 131 S. Ct. at

---

[23] Brady v. Maryland, 83 S. Ct. 1194 (1963).
[24] *See* Doc. No. 1 at 5-6, 10-19.

784.    "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-85.   For AEDPA to apply, a state court need not state its reasons for its denial, nor must it issue findings, nor need it specifically state that the adjudication was "on the merits."   Id. at 784.

To the extent that the petitioner exhausted his claims, they were adjudicated on the merits by state courts.   This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" Berghuis v. Thompkins, 130 S. Ct. 2250, 2258 (2010) (quoting 28 U.S.C. § 2254(d)(1)).   The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."   Schriro v. Landrigan, 127 S. Ct. 1933, 1939 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) only in those situations "where there is no possibility fairminded jurists could disagree that the

state court's decision conflicts with" Supreme Court precedent. Harrington, 131 S. Ct. at 786.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). Id. (explaining that "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable"). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. Id. (citation omitted); see also Wilson v. Cain, 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.

"Review under § 2254(d)(1) focuses on what a state court knew and did." Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," Pinholster explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."

<u>Id.</u> at 1400.  Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review."  <u>Id.</u>

### III. <u>Discussion</u>

#### A. <u>Due Process and Trial Claims (Counts 1, 2, and 3)</u>

Frattarola alleges that the State violated his rights to due process by: (1) not disclosing <u>Brady</u> material in a timely fashion (Ground 1); (2) not allowing him to confront the witnesses against him (Ground 2); and (3) allowing a "medically insane" witness to testify (Ground 3).

##### 1. *Brady* Claim

Frattarola alleges that the prosecution did not provide impeachment evidence regarding M.P. and her mother, Allison, until the day before trial.  Specifically, Frattarola contends that he was prejudiced by the late disclosure that M.P. had stolen something from a department store and had lied to her stepfather about bringing a cell phone to school, and that Allison was on some sort of medication.  Frattarola contends that M.P. had a "history of stealing," having allegedly stole three of his Pokémon cards in addition to the incident at a department store reflected in the <u>Brady</u> disclosure.

A petitioner asserting a claim under Brady v. Maryland, 83 S. Ct. 1194 (1963), must show: "(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." United States v. Swenson, 894 F.3d 677, 683 (5th Cir. 2018) (citing United States v. Dvorin, 817 F.3d 438, 450 (5th Cir. 2016)).

In the Fifth Circuit, "evidence that is turned over to the defense *during* trial, let alone *before* trial, has never been considered suppressed." United States v. Swenson, 894 F.3d 677, 683 (5th Cir. 2018) (emphasis in original) (citing Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008) (holding that Brady material disclosed *during trial* was not suppressed)). "Instead, [the Fifth Circuit] has held that when a defendant challenges 'the late production of impeachment evidence,' the analysis 'turns on whether the defendant was prejudiced by the tardy disclosure.'" Id. (quoting United States v. Morrison, 833 F.3d 491, 508 (5th Cir. 2016)).

Respondent argues that the evidence in question was not suppressed. The record shows that these issues -- that Allison was on medication and M.P. was untruthful to her parents about having a cell phone at school and had stolen from a department store -- were disclosed before trial and that Frattarola was

11

aware of Allison's medication and M.P.'s lying and stealing.[25]
The state habeas court further found that Frattarola failed to
show that the <u>Brady</u> notice contained exculpatory evidence.[26]

Frattarola's contention that he did not have time to
investigate these issues challenging Allison and M.P. is
contradicted by the credible affidavit of Lucinda Marshall, his
trial counsel, and the findings of the state habeas court.
Frattarola fails to show that the evidence in the late <u>Brady</u>
disclosure was suppressed, exculpatory, material, or
prejudicial.

The state court's finding that he failed to state a <u>Brady</u>
claim is not an unreasonable application of the evidence in the
record, nor is it contrary to, or an unreasonable application
of, Supreme Court precedent. Therefore, he is not entitled to
federal habeas relief on Ground 1.

## 2.   Confrontation Clause Claim

Frattarola contends that the prosecution violated his
rights under the Confrontation Clause because it presented
testimony and a medical report from Dr. Lauren Burge that

---

[25] <i>See</i> Doc. No. 12-22 at 106-107, SHCR at 000103-104, Finding of Fact
No. 11 (finding that "[t]he information was disclosed prior to trial
and [Frattarola] had already discussed with his trial counsel the
potential medication taken by Williams and the complainant's alleged
thefts, as Marshall states that she had time to investigate both
claims prior to trial").
[26] <u>Id.</u> at 106, SHCR at 000103, Finding of Fact No. 10.

contained hearsay statements from M.P. regarding the sexual contact. He alleges that he was not able to cross-examine M.P. and/or Allison about those statements.

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross examine." Crawford v. Washington, 124 S. Ct. 1354, 1369 (2004). However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Id. at 1369 n. 9 (citing California v. Green, 90 S. Ct. 1930, 1937 (1970)).

The state habeas court found that Frattarola failed to show that the State violated his right to confront witnesses because both Allison and M.P. testified at trial and were subject to cross-examination.[27] It also found that Frattarola does not have the right to dictate the order that witnesses are presented at trial.[28]

The record reflects that both M.P. and Allison testified at trial and were subject to cross examination. Therefore,

---

[27] *See* Doc. No. 12-22 at 107, SHCR at 000104, Finding of Fact No. 12.
[28] Id., Finding of Fact Nos. 12, 13.

Frattarola cannot establish a violation of the Confrontation Clause regarding their out-of-court statements. *See* Crawford, 124 S. Ct. at 1369 n.9. Frattarola fails to show that the state court's rejection of his Confrontation Clause claim was an unreasonable determination of the facts based on the evidence in the record or was contrary to, or an unreasonable application of established Federal law as determined by United States Supreme Court precedent. 28 U.S.C. § 2254(d). Therefore, Ground 2 is dismissed.

### 3.   Presenting a "Medically Insane" Outcry Witness

Frattarola claims that his trial was unfair because the State presented a "medically insane" outcry witness. He alleges, without corroborating evidence, that Allison attempted suicide in June 2016 and has a history of other instances of suicidal behavior. He also claims that she lived with a known "meth" dealer and exhibited traits of a drug user. *See* Doc. No. 4 at 10. He contends that these issues should have disqualified Allison as an outcry witness and discredited her testimony. He cites United States v. Lindstrom, 698 F.2d 1154, 1160 (11th Cir. 1983), in support of his claim that Allison's alleged mental instability provided a basis for questioning her competency to testify against him.

Frattarola's reliance on the Eleventh Circuit's holding Lindstrom is misplaced, as that case is readily distinguishable from the situation here. In Lindstrom, the trial court limited the cross-examination of a key witness and denied the defense access to that witness's medical records suggesting that she suffered from psychiatric illnesses and delusions. Id. at 1159. Unlike the court in Lindstrom, the record does not show that the trial court placed any restrictions on the cross examination of Allison or that it denied the defense access to her medical records.[29] There is no evidence that Allison lacked mental competence or that she suffered from mental illness when she testified, and Frattarola's conclusory allegations are insufficient to establish a claim on federal habeas review. See Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding") (citing Schlang v. Heard, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)).

Indeed, defense counsel stated in her affidavit that she did not find any leads that were useful in investigating Allison's mental competence, and the record indicates that the

---

[29] Doc. No. 12-22 at 93, SHCR at 00090 (stating that she was not able to find any leads to use in investigating the mental competence of Allison).

trial court conducted a hearing regarding whether Allison could serve as the outcry witness.[30]

The state habeas court found that Frattarola failed to show that Allison was medically insane such that her testimony should be excluded, finding that there was no evidence to support his accusation regarding her mental state at any point during the investigation or during her testimony.[31] The state habeas court further found that Frattarola failed to meet his burden to show that there was a material violation that made his trial fundamentally unfair, nor did he meet his burden to show that any such violation contributed to his conviction.[32]

The state court's factual finding that there was no evidence to support Frattarola's accusation regarding Allison's mental state is entitled to deference under the AEDPA. Frattarola does not point to evidence in the record to show that Allison was "medically insane," and the state court's determination, in its pretrial hearing, that she was a reliable and available witness who could serve as the outcry witness in this case is not an unreasonable determination of the facts

---

[30] Doc. No. 12-5 at 6-16 (hearing regarding Allison as outcry witness and trial court finding that "the statement to Allison Williams is reliable, that she was the first person . . . that this child made a statement to").
[31] Doc. No. 12-22 at 107, SHCR at 000104, Finding of Fact Nos. 14-15.
[32] Id., Finding of Fact No. 16.

based on the evidence in the record.[33]  In addition, the state habeas court's legal conclusion that allowing Allison to testify was not a violation of due process was not an unreasonable application of Supreme Court precedent, nor was it an unreasonable application of the facts based on the evidence in the record.  Ground 3 is dismissed.

## B.   Ineffective Assistance of Counsel (Counts 4-14)

The Constitution guarantees a fair trial for criminal defendants through the Due Process Clause, but the Sixth Amendment, which conveys the right to have the effective assistance of counsel, largely defines the basic elements of a fair trial.  *See* U.S. CONST. amend. VI; Strickland v. Washington, 104 S. Ct. 2052, 2063 (1984).  Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

---

[33] *See* Doc. No. 12-5, RR Vol. III at 16.

_Strickland_, 104 S. Ct. at 2064.   Thus, to prevail under the _Strickland_ standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice because of the alleged deficiency. _See_ Williams v. Taylor, 120 S. Ct. 1495, 1511-12 (2000).

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." _See_ United States v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005) (citing _Strickland_, 104 S. Ct. at 2065), _cert. denied_, 126 S. Ct. 1616 (2006) (mem.).   In the Fifth Circuit, "federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because [the courts] take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)."   Rhoades v. Davis, 852 F.3d 422, 434 (5th Cir. 2017).

### 1.   Failure to Impeach Complainant (Ground 4)

Frattarola alleges that trial counsel was ineffective for failing to impeach M.P. with the information in the June 18, 2018, _Brady_ disclosure. That disclosure stated that M.P. stole from a department store sometime in the year preceding the trial and that she once lied to her stepfather about bringing a cell

phone to school.[34]

Trial counsel submitted an affidavit in the state habeas proceedings explaining that she made the decision at trial to "limit[] cross examination of a very likable girl" based on what she believed would help or hurt Frattarola.[35]  Counsel further explained that she, along with the investigator she hired, investigated Frattarola's claims about M.P. lying about other sexual abuse and committing thefts and did not find any evidence to support Frattarola's claims.[36]  Counsel stated that Frattarola wanted her "to obtain complainant's school records as he claims she had many disciplinary problems, including thefts" and that counsel "did so and the records only revealed well above average grades and no disciplinary actions and no reported thefts."[37]  The state habeas court found trial counsel's affidavit to be credible and the facts asserted therein to be true.[38]  It further found that Marshall had investigated claims that M.P. had stolen items and was unable to find any official documentation that this was true.[39]

The Fifth Circuit has recognized that a trial counsel's tactical decision not to impeach a child-victim of sexual abuse

---

[34] *See* Doc. No. 12-2 at 120 (<u>Brady</u> Disclosure).
[35] Doc. No. 12-22 at 95, SHCR at 00092.
[36] <u>Id.</u> at 94, SHCR at 00091.
[37] <u>Id.</u> at 95, SHCR at 00092.
[38] <u>Id.</u> at 106, SHCR at 000103 (Finding of Fact No. 9).
[39] <u>Id.</u> at 110, SHCR at 000107 (Finding of Fact No. 35).

is not unreasonable because doing so may do more harm than good. *See* <u>Reed v. Vannoy</u>, 703 F. App'x 264, 270 (5th Cir. July 28, 2017) (per curiam); *see also* <u>Barker v. Lumpkin</u>, No. CV H-21-3001, 2023 WL 3261779, at *11 (S.D. Tex. May 4, 2023) (holding that the petitioner failed to show that trial counsel's decision not to impeach a child victim of sexual abuse was unreasonable trial strategy).

Here, contrary to Frattarola's claims that M.P. had multiple disciplinary problems at school, the defense investigation into M.P.'s school records showed no disciplinary problems, no problems with thefts, and above-average grades. Further, defense investigation into Frattarola's claims that M.P. had made other false outcries of sexual abuse and that she had stolen items did not uncover any evidence to support Frattarola's accusations regarding M.P.'s character. Nor was there any evidence to support his claims that police were called to the apartment for disturbances. Finally, Marshall stated that she determined it would not be beneficial to present Frattarola's theories regarding why M.P.'s family was accusing him because they involved disclosing that Frattarola and M.P.'s stepfather had a disagreement about selling stolen property.[40]

---

[40] *See* Doc. No. 12-22 at 110, SHCR at 107 (Finding of Fact Nos. 32-36).

Frattarola does not show that trial counsel's decision not to impeach M.P. with his claims regarding thefts, lies, and/or disagreements with the family over illegal activities was an unreasonable trial strategy because opening these lines of questioning could have done more harm than good to his case. Indeed, "'a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable.'" Reed, 703 F. App'x at 270 (quoting Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997); Pape v. Thaler, 645 F.3d 281, 290 (5th Cir. 2011) (explaining that it is reasonable trial strategy not to impeach where such action could open the door to "double-edged evidence")).

Frattarola does not overcome the presumption that counsel's decision not to impeach M.P. fell within the "wide range of reasonable professional assistance" permissible under Strickland, 104 S. Ct. at 2065, nor does he overcome the presumption, under AEDPA, that the state court's finding that counsel's performance was not deficient was a reasonable application of Supreme Court precedent. Therefore, Ground 4 is dismissed.

2.   Failure to Present Alibi (Ground 5)

Frattarola claims that trial counsel was ineffective for

failing to present his "alibi" defense of being in prison on April 1, 2016, the date listed in the indictment. Trial counsel explains in her affidavit that this line of defense was not seriously considered because "on or about" is not a specific date, and M.P.'s mother and stepfather gave a specific date range when Frattarola lived with them that was after his release from prison.[41] Marshall also stated, and the state habeas court found, that the defense did not find it beneficial or necessary to raise the "alibi" defense because both Frattarola and trial counsel agreed that it was more beneficial to keep that conviction from the jury.[42]

As a matter of well-settled Texas law, the "on or about" language in an indictment "allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitations period." Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997) (en banc) (citing TEX. CODE CRIM. P. art. 21.02(6) and Texas cases). It is uncontroverted that Frattarola lived with M.P. and her family from the time he was released from prison sometime after April 1, 2016, until about December 2016.

---

[41] Doc. No. 12-22 at 108, SHCR at 000105, Finding of Fact No. 23.
[42] Id., Finding of Fact Nos. 22, 24.

The state court's conclusion that counsel was not ineffective when she did not raise an inapplicable alibi defense based on the "on or about" language in the indictment was not contrary to, or an unreasonable application of _Strickland_. *See* _Smith v. Puckett_, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."). The petitioner fails to show his entitlement to relief on Ground 5.

### 3.   Failure to Exclude State's Expert (Ground 6)

Frattarola alleges that trial counsel was ineffective because she did not file a motion to exclude the state's expert, Dr. Lauren Burge.

The Texas intermediate appellate court addressed the issue of the hearsay evidence contained in the report and, "[a]lthough appellant asked the trial court to redact the exhibit by removing the complained-of statements, appellant did not object when the doctor later testified verbatim about the statements made in the report." _Frattarola_, 2019 WL 3956170, at *1. Respondent argues that Frattarola was not prejudiced because the evidence was cumulative to other evidence presented at trial. As noted previously, the declarants of these out-of-court statements, Allison and M.P., testified at trial and were

subject to cross examination regarding their statements. The state habeas court found that Frattarola failed to show that any of his proposed motions or objections had any merit. It further found that Frattarola failed to show that any such motion would have been granted had it been asserted or that the trial court would have committed error in overruling such objections had they been made.[43]

Counsel is not ineffective for failing to make objections or move to exclude an expert witness when such motion or objection would have been futile. *See* Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) (noting that the "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness"); *see also* Lavernia v. Lynaugh, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citation omitted). Frattarola does not show that Dr. Burge, a trained pediatrician specializing in child abuse cases, was an improper expert witness or that a motion to exclude her as a witness would have had any merit had it been asserted. Therefore, he fails to show that the state habeas court's finding on this issue was contrary to, or an unreasonable application of Strickland. Ground 6 is dismissed.

---

[43] Doc. No. 12-22 at 112, SHCR at 000109 (Finding of Fact Nos. 45-47).

4.   <u>Failure to Object (Ground 7)</u>

Frattarola claims that counsel was ineffective when she did not object to the untimely disclosure of <u>Brady</u> evidence on June 18, 2018; did not object and request a competency hearing to assess the sanity of Allison; did not object to the testimony of the state's expert as hearsay and the denial of the right to confront witnesses; and did not make a follow-up objection to the expert witness's testimony to preserve the issue for appeal.

Many of these issues have been discussed previously.  As explained above, the information in the June 2018 <u>Brady</u> disclosure related to issues known and investigated by trial counsel.  Further, the state habeas court found that there was no evidence to show that Allison was "medically insane" or that she otherwise lacked mental competence to testify.  Finally, there was no Confrontation Clause violation where both declarants in the expert's report testified and were subject to cross examination at trial.  In sum, Frattarola fails to show, had counsel made any of the objections that he contends she should have made, that they would have been sustained, or that any overruling of such objections would constitute reversible error.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  <u>Clark v.</u>

Collins, 19 F.3d 959, 966 (5th Cir. 1994).   Accordingly, Frattarola fails to show that the state habeas court's determination that counsel was not ineffective for failing to object to these issues was contrary to, or an unreasonable application of Strickland.   Ground 7 is dismissed.

### 5.   Failure to Investigate (Ground 8)

Frattarola claims that trial counsel failed to investigate M.P.'s theft, lying to her parents, other claims of sexual abuse by a cousin and neighbor, and his claim that she stole three valuable Pokémon cards from him.   The state habeas court found that counsel did investigate these issues.[44]

A habeas corpus petitioner who alleges his counsel's failure to investigate must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial.   *See* Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005) (citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)).   Frattarola does not state what further investigations should have been conducted beyond what trial counsel and the investigator investigated in his case. Trial counsel states in her affidavit that she, or her investigator, searched Baytown police records to see if there

---

[44] Doc. No. 12-22 at 110-111, SHCR at 000107-108 (Finding of Fact Nos. 32-40).

were any records of M.P. making a false outcry similar to the outcry in this case; obtained apartment records to see if there were any instances where the police were called out to the apartment; investigated M.P.'s school records; and investigated Frattarola's proposed character witness.[45]   Even so, none of these investigations yielded any relevant information that could be useful in the case for impeachment purposes.[46]   The state habeas court found that Frattarola failed to show "that the results of a more in-depth investigation regarding any of [his] claims would have made a difference in the outcome of the case."[47]

Frattarola fails to show that the state habeas court's conclusion that trial counsel was not ineffective for failing to investigate was contrary to, or an unreasonable application of Strickland.   Ground 8 is dismissed.

## 6.   Failure to Pursue a Character Instruction (Ground 9)

Frattarola alleges that counsel was ineffective for failing to pursue a character instruction at trial.   He claims that trial counsel should have presented evidence regarding a 2012 Border Patrol incident where he was stopped while transporting two minor girls who were illegal aliens.   He contends that the

---

[45] *See* Doc. No. 12-22 at 94-95, SHCR at 00091-92.
[46] Id.
[47] Id. at 112, SHCR at 000109 (Finding of Fact No. 44).

fact that he was released from detention without being prosecuted for a crime after the girls were screened for sexual abuse shows that he did not harm them.[48] He also points to two occasions where he lived with women (Rebecca Terry or Tyree and Janet Aberdeen) who had minor female children in the house and that he was not accused of any sexual misconduct against those girls. He alleges that counsel made no reasonable effort to contact witnesses or investigate the Border Patrol stop where he was detained with two minor girls.

"Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses' willingness to testify and the substance of the proposed testimony." Gregory v. Thaler, 601 F.3d 347, 353 (5th Cir. 2010) (citing Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007)); see also Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001) (emphasizing that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative") (citations omitted). To show prejudice, a petitioner must show "not only that [the] testimony would have been favorable, but also that the witness would have testified

---

[48] It is unclear how disclosing this incident to the jury would have helped Frattarola rather than harmed him.

at trial." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).

The state habeas court found, based on Marshall's credible affidavit, that Marshall investigated Tyree as a possible character witness but that Tyree could not be located, and that Frattarola did not provide any other potential character witnesses regarding his behavior around young girls.[49] The state court further found that Frattarola failed to show that the result of a more in-depth investigation regarding any of his claims would have made a difference in the outcome of his case.[50]

Frattarola does not meet his burden to show that his proposed witnesses were available to testify and that they would have testified favorably to him had they been called. Frattarola fails to show that the state habeas court's conclusion that trial counsel was not ineffective regarding investigating and presenting character witnesses was contrary to, or an unreasonable application of Strickland. Ground 9 is dismissed.

7. **Failure to Investigate Exculpatory Evidence (Ground 10)**

Frattarola claims that counsel was ineffective for failing

---

[49] Doc. No. 12-22 at 111, SHCR at 000108 (Finding of Fact Nos. 40-42).
[50] Id. at 112, SHCR at 000109 (Finding of Fact No. 44).

to investigate and present exculpatory evidence.  In particular, he asserts that Marshall should have presented evidence reflecting that his laptop and cell phone were searched and that no illegal items were found on the devices.  Frattarola contends that the absence of illegal items on his devices shows that M.P.'s accusation that he showed her pornography is false.  He states that although Marshall's investigator told him that the results of that crime lab inspection would be beneficial to his case, Marshall failed to subpoena those crime lab results.

The state habeas court found that Marshall was unaware that Frattarola believed that his laptop and cell phone had been searched for this case but was aware that Frattarola believed his cell phone and computer might have been searched in another county for another issue.[51]  It further found that Marshall never received confirmation that a search had occurred and did not believe that the search was relevant to her representation of Frattarola in this case.[52]

In <u>Strickland</u>, the Supreme Court emphasized that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or

---

[51] Doc. No. 12-22 at 109, SHCR at 000106 (Finding of Fact Nos. 26, 27).
[52] <u>Id.</u> (Finding of Fact No. 28).

omission of counsel was unreasonable." 104 S. Ct. at 2065 (citations omitted). In Harrington, the Court reiterated that "Strickland, however, permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" Harrington, 131 S. Ct. at 788-89 (holding that the state habeas court's determination that trial counsel was not ineffective for failing to investigate and present expert testimony on certain blood evidence because it was "well within the bounds of a reasonable judicial determination for the state court to conclude that defense counsel could follow a strategy that did not require the use of experts regarding the pool in the doorway of [one of the victim's] bedroom"). There, the Supreme Court found that "it is at least arguable that a reasonable attorney could decide to forgo inquiry" into an investigative path in the circumstances of that case.   Id.

Likewise, it is "at least arguable" that Marshall could reasonably decide to forgo inquiry into Frattarola's laptop and cell phone, where she believed that they had been searched by another county investigating a different issue and did not believe such inquiry would be helpful or relevant to this case.[53]

Frattarola fails to show that the state court's conclusion that Marshall was not ineffective regarding this issue is not

---

[53] Doc. No. 12-22 at 93, SHCR at 00090.

contrary to, or an unreasonable application of Strickland.
Ground 10 is dismissed.

### 8. Failure to Present Expert Testimony (Ground 11)

Frattarola alleges that Marshall was ineffective when she did not call an expert to testify regarding childhood memory. He contends that she should have called Dr. Jerome Brown.

In the Fifth Circuit, claims regarding uncalled witnesses "are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008)). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Id. (citation omitted) (explaining that this requirement applies to both lay and expert witnesses).

Trial counsel states in her affidavit that she did not investigate calling Dr. Jerome Brown as an expert on repressed

childhood memories because "this was not a case involving childhood repressed memories that came to light years later."[54]

The state habeas court found, based on Marshall's affidavit that it found to be credible, that Marshall did not find it beneficial or necessary to call Dr. Brown as an expert witness because this case did not involve repressed memories, rendering any possible testimony from Brown irrelevant.[55]

The Supreme Court has often explained that "strategic decisions – including whether to hire an expert – are entitled to a 'strong presumption' of reasonableness." Dunn v. Reeves, 141 S. Ct. 2405, 2410 (2021) (citing Harrington, 131 S. Ct. at 787). Frattarola does not overcome that strong presumption where he fails to show what the substance of Dr. Brown's testimony would have been and that it would have been relevant and helpful to his case. He fails to show that the state court's determination that Marshall provided him with reasonably effective assistance of counsel was contrary to, or an unreasonable application of Strickland regarding this issue. Ground 11 is dismissed.

9.   Failure to Prepare for Trial (Ground 12)

Frattarola alleges that Marshall was not prepared for trial

---

[54] Doc. No. 12-22 at 93-94, SHCR at 00090-91 (Marshall Aff.).
[55] Doc. No. 12-22 at 109, SHCR at 000106 (Finding of Fact No. 29).

when she failed to conduct a sufficient voir dire and cross examination of witnesses and opted not to make an opening statement.

The record shows that Frattarola's allegation that Marshall asked "only one vague question" at voir dire is untrue. Marshall asked many questions on voir dire and established a rapport with the jurors, reminding them of the burden of proof, discussing parents and grandparents' talking with their children and grandchildren about inappropriate touching. She introduced the concept that children fib when they want to please an adult or steal cookies or other goodies that they want. She asked the jurors other questions regarding whether they could be objective when listening to the testimony. Frattarola's allegations about voir dire are belied by the record.

Further, his complaint that Marshall did not make an opening statement is frivolous. Whether to make an opening statement as defense counsel is a matter of professional judgment, and waiving opening statement may be the wisest course of action in many cases. For example, in Williams v. Beto, the Fifth Circuit noted:

> [I]t is next said that the attorney failed to make an opening statement to the jury. Certainly, this was a matter of professional judgment, and in this kind of case was very likely the wiser course to follow. The best hope of defense counsel on the facts here involved was to catch the prosecution asleep or

> lacking evidence at some fatal juncture of the trial. It could well be considered that this was no time for defense counsel, at the very outset, in an opening statement to reveal the weak hand he had to play.

Williams v. Beto, 354 F.2d 698, 703 (5th Cir. 1965). So too here.

Frattarola's allegation regarding Marshall's decision whether and to what extent to cross examine witnesses is similarly infirm. As explained above regarding Marshall's alleged failure to impeach M.P., the scope and length of cross-examination of the child victim of sexual assault is a matter of professional judgment. See Reed, 703 F. App'x at 270; Barker, 2023 WL 3261779, at *11. M.P. came across, in Marshall's words, as a "likeable" witness.

Likewise, Marshall stated that her decision not to cross examine Dr. Burge or M.P. was based on what she believed would help Frattarola and not hurt him.[56] The state court concluded that it would not "'second-guess through hindsight' the strategy of counsel" regarding her trial decisions.[57]

The state court's conclusion that Frattarola failed to show that Marshall's performance fell below an objective standard of reasonableness and that, but for the alleged deficiencies, there is a reasonable probability that the result of his trial would

---

[56] Doc. No. 12-22 at 95, SHCR at 00092 (Marshall Aff.).
[57] Id. at 114, SHCR at 000111 (Finding of Fact No. 52).

have been different was not contrary to, or an unreasonable application of Strickland and was not an unreasonable application of the facts based on the evidence in the record. Ground 12 is dismissed.

10.     Admission of Guilt (Ground 13)

In Ground 13, Frattarola claims that Marshall "admitted his guilt" on closing argument by stating: "You (the jurors) have heard all the evidence against my client and let's be honest here, we have seen a lot worse."[58]  The record shows that trial counsel did not make this statement during closing argument at the guilt/innocence phase of trial.  However, she made the following statement while arguing for the bottom range of sentencing at the *sentencing phase* of the trial: "Think about the fact that when it comes to indecency with a child, I'm sure you can think of much worse scenarios than a foot touching business."[59]

Contrary to Frattarola's contentions, during closing argument of the guilt/innocence phase, trial counsel discussed the burden of proof and argued that the State had not proved its case beyond a reasonable doubt.[60]  Marshall contended that M.P.'s

---

[58] Doc. No. 1 at 18 (Frattarola's paraphrase of Marshall's statement).
[59] Doc. No. 12-7 at 30-31, RR Vol. V (Sentencing Hearing) at 30-31.
[60] Doc. No. 12-6 at 60, RR Vol. IV at 60 (Defense closing argument at trial on the merits).

story was the only evidence against Frattarola, and that the story came about after the mother started questioning her and yelling at her. Marshall suggested in closing argument that M.P. told the story so many times that she eventually came to believe that the story she told her mother was true.[61] The record belies Frattarola's contentions that trial counsel conceded guilt at closing argument during the guilt/innocence phase.[62]

At the sentencing hearing, Marshall asserted that "I'm sure you can think of much worse scenarios than a foot touching business," arguing that the jury should sentence Frattarola at the low end of the sentencing range. The Fifth Circuit "continue[s] to extend highly deferential treatment to counsel's sentencing strategy and tactical decisions" during the penalty phase of trial. See Pape, 645 F.3d at 292-93 (holding that the state court did not unreasonably apply Strickland where trial counsel referred to the defendant as a "pedophile" during the sentencing hearing to portray the defendant as a person who suffered from a treatable mental health disease); see also Dowthitt v. Johnson, 230 F.3d 733, 751 (5th Cir. 2000) (holding that the state court did not unreasonably apply Strickland where trial counsel, during the sentencing phase of trial, stated that

---

[61] See id. at 58-59.
[62] See Doc. No. 12-6 at 57-60.

defendant "suffered from a 'disease' that resulted in him acting in a 'frenzy, like the feeding of a shark or something,'" which, when taken in context, was meant to argue that the defendant's conduct was not deliberate and that he posed no future danger).

Similarly, Marshall's closing argument at sentencing, taken in context, contended that Frattarola's crime was not as bad as other indecency-with-a-child scenarios that the jury could imagine. As in Pape and Dowthitt, Frattarola fails to show that the state court's determination that counsel was not ineffective was an unreasonable application of Strickland.

Even if Frattarola had shown deficient performance, he fails to show that Marshall's representation at the sentencing hearing caused him actual prejudice. To show prejudice, Frattarola must establish "a reasonable probability that but-for his counsel's deficient performance, he would have received a 'significantly less harsh' sentence." Ward v. Dretke, 420 F.3d 479, 498 (5th Cir. 2005) (citation omitted). This Frattarola cannot do. Indecency with a child by contact is a second-degree felony with a sentence range of 2 to 20 years without an enhancement for a prior felony. TEX. PENAL CODE § 22.11(a)(1); § 12.33(a). Frattarola's punishment was enhanced by a prior felony conviction in 2001 from New Jersey, which increased the punishment range to 5 to 99 years, the same range as for a

first-degree felony. TEX. PENAL CODE § 12.42(b). Frattarola cannot show that his 18-year sentence -- which was at the lower end of the sentencing range of 5 to 99 years -- would have been significantly less harsh had Marshall not mentioned that "we could imagine a lot worse" regarding the facts underlying his crime. Frattarola fails to show that the state court's determination on this issue was an unreasonable application of Strickland. Ground 13 is dismissed.

## 11.    Abandonment at Sentencing (Ground 14)

Likewise, Frattarola's claim in Ground 14 that Marshall "abandoned" him at sentencing is conclusory and contradicted by the record. Contrary to Frattarola's contentions, the record shows that Marshall asked the jury for a sentence at the low end of the sentencing range and argued that the process was made harder on M.P. by her mother and not Frattarola.[63] Further, the State presented evidence from its one penalty-phase witness, Harris County Sheriff's Deputy Diane Medina, who is trained in crime scene investigations and fingerprint analysis and testified that Frattarola's fingerprints on his prior convictions matched the fingerprints taken for this case. Frattarola fails to show that there was a meritorious objection

---

[63] Doc. No. 12-7 at 30-31, RR Vol. V (Sentencing Hearing) at 30-31.

to make regarding Medina's testimony or the State's presentation of his prior convictions. Counsel is not ineffective for failing to assert a meritless objection. <u>Clark</u>, 19 F.3d at 966. There is no basis for Frattarola's contention that trial counsel "abandoned" him at the punishment phase of the trial; the record shows that she attempted to minimize his crime and argued for a sentence on the low end of the sentencing range.

The state habeas court found that, "based on the totality of the representation and the particular circumstances of the case, Marshall provided [Frattarola] with reasonably effective assistance of counsel."[64] Frattarola does not show that the state court's conclusion that trial counsel rendered reasonably effective assistance of counsel is contrary to, or an unreasonable application of <u>Strickland</u>, or was an unreasonable determination of the facts based on the evidence in the record. Therefore, Ground 14 must be dismissed.

Under the doubly deferential review this federal court applies to ineffective assistance of counsel claims under <u>Strickland</u>, <u>Harrington</u>, and AEDPA, Frattarola does not meet his burden to show that his trial counsel rendered ineffective assistance in this case. Because Frattarola fails to show his entitlement to habeas relief on any of his issues, his petition

---

[64] Doc. No. 12-22 at 114, SHCR at 000111 (Finding of Fact No. 53).

must be dismissed with prejudice.

## IV.  Motion to Amend Petition

Frattarola recently filed a motion for leave to amend his petition, asserting that on June 13, 2023, he first became aware that Michael Hamilton, his friend into whose apartment he moved in April or May 2016 and who testified in Frattarola's 2018 trial, himself was tried and convicted of continuous sexual abuse of M.P. in 2022. Frattarola alleges that there is a nexus between his case and Hamilton's case and that information obtained in Hamilton's trial supports his Brady claim and ineffective assistance of counsel claims.  He seeks to amend grounds 1, 4, 5, 6, 8, 9, 11, and 12 with new facts.

Frattarola asserts that M.P. was previously abused by Zane Smith in 2015, prior to the time Frattarola lived with the family in Hamilton's apartment for several months in 2016, and that this abuse was not reported to the authorities at the time. He states that M.P. testified at Hamilton's trial that Hamilton showed her pornography and exposed his penis to her, which, Frattarola contends, is "strikingly familiar" to the accusations made at his trial.  Doc. No. 16 at 3.  He states that the Hamilton trial uncovered Hamilton's physical abuse, which he contends is relevant to explain why M.P. was nervous and scared

during her mid-December 2016 outcry to her mother.[65]   Frattarola
alleges statements he asserts M.P. made at the Hamilton trial
about abuse from another person and contends that the putative
statements he attributes to her are not consistent with her
statements at his trial.   He further contends that Allison and
Hamilton had a strong motive for blaming him for the abuse in
2016 because they were grooming M.P.   He complains that
Hamilton's lawyer was able to provide evidence of prior abuse by
Zane Smith, evidence that his own lawyer stated did not exist.
Id. at 5.   He also contends that Hamilton's counsel was able to
locate witnesses who stated that M.P. was not a truthful person,
"a task that Petitioner's counsel seemed to think was
irrelevant." Id.

Federal habeas review of this state conviction is limited
to the record considered by the state courts in addressing
Frattarola's claims. *See* Cullen, 131 S. Ct. at 1400. Therefore,
this Court is constrained not to consider evidentiary materials
that were not presented to the state courts for their review.

---

[65] According to the Texas Court of Appeals Opinion affirming
Hamilton's conviction, M.P., her mother Alison, Hamilton, and
M.P.'s brother, in December 2016 all moved into a house with
Allison's mother.   Hamilton v. State of Texas, 2023 WL 3099909
at *1 (Tex. App.-Houston [1st Dist.] 2023; *see also* Background
at page 2, above, and note 6.   The Opinion recites evidence that
M.P. ultimately reported to a foster care parent to whom CPS had
entrusted M.P.'s care, that Hamilton abused M.P. beginning in
December 2016 and the abuse continued until November 2018.   Id.
Hamilton was sentenced to 56 years in prison.   Id.

Although a court should freely grant a motion for leave to amend when justice so requires, it should not do so when such amendment would be futile. *See* Foman v. Davis, 83 S. Ct. 227, 230 (1962). An amendment is futile when it would be subject to dismissal if allowed. *See* DeLoach v. Woodley, 405 F.2d 496, 497 (5th Cir. 1968). To the extent that Frattarola seeks to add new claims or change the substance of his existing claims, his motion to amend must be denied as futile because he has not properly exhausted these claims in state court, and those amended claims would be subject to dismissal on that basis. *See* Womack v. Quarterman, No. Civ. A. G-07-0510, 2011 WL 797445, at *4 (S.D. Tex. Feb. 28, 2011) (denying the petitioner's motion to amend because he presented new legal theories or new factual claims that were not presented to the state court, and, therefore, did not satisfy the exhaustion requirement for the amended claims); *see also* Crain v. Davis, No. 3:15-cv-2476-M-BN, 2016 WL 4385826, at *4 (N.D. Tex. Jul. 14, 2016), *rec. adopted*, 2016 WL 4399316 (N.D. Tex. Aug. 17, 2016) (denying leave to amend as futile because the petitioner did not properly exhaust his claims); Sixta v. Quarterman, Civ. A. No. H-07-0118, 2007 WL 2746951, at *2 (S.D. Tex. Sept. 19, 2007) (explaining that a court should not grant a motion to amend if the amendment would be futile).

To the extent that Frattarola seeks to bolster his existing claims by pointing to examples of ways that his attorney could have, or should have, presented evidence of Zane Smith's prior abuse or called witnesses to state that M.P. was untruthful, he fails to show that the information about Smith, even if it were reported and discovered at the time of his trial,[66] would have been admissible. Under Texas law, information about a victim's prior sexual history is not admissible except under limited circumstances not evident here. *See* TEX. R. EVID. 412. Frattarola fails to show that trial counsel would have been allowed to introduce evidence of the prior sexual abuse over the State's objection and that it would have resulted in an acquittal.[67] *See* Barker, 2023 WL 3261779, at *10. Frattarola cannot meet his burden to prove actual prejudice from counsel's alleged failure to raise this issue at trial, and, therefore, his proposed amendment is futile.

In addition, the allegations that two other men also sexually abused M.P. does not exonerate Frattarola.

---

[66] Frattarola states that the abuse with Zane was not reported to the authorities. There is no indication that such abuse was known by either the prosecutor or defense counsel at the time of Frattarola's trial in June 2018.

[67] Indeed, the Hamilton trial court did not allow evidence regarding M.P.'s prior abuse by Frattarola or Zane to be admitted at trial. *See* Hamilton v. State, No. 01-21-00587-CR, 2023 WL 3099909, at *2-5 (Tex. App.—Houston [1st Dist.] Apr. 27, 2023, pet. ref'd). There is no indication that the result in Frattarola's trial would have been any different had Zane's abuse been discovered at that time.

Finally, it is worth noting that M.P. testified against her abusers in their respective trials, **and the jury believed her each time**. The Fifth Circuit recently explained that "a sexual assault conviction 'is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred.'" Flores v. Lumpkin, No. 21-20579, 2023 WL 4375028, at *5 (5th Cir. July 7, 2023) (quoting Tex. Code Crim. Proc. Ann. art. 38.07(a)). M.P.'s testimony that Frattarola sexually abused her is enough to support his conviction. Frattarola fails to show that "every reasonable jurist would believe it reasonably likely that [Frattarola] would have been acquitted" if the jury had heard about the other abusers or from witnesses that stated M.P. could be untruthful. Id. Nothing in his proposed amendment shows that trial counsel's performance caused him actual prejudice, and, therefore, his motion to amend would be futile. Accordingly, his motion to amend at this late stage of the proceedings is DENIED.

## V.    Certificate of Appealability

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 120 S. Ct. 1595, 1603-04 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.; Beazley v. Johnson, 242 F.3d 248, 263 (5th Cir. 2001).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See* Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, this Court concludes that jurists of reason would not debate whether the petition was properly dismissed. Therefore, a certificate of appealability will not issue.

## VI.  ORDER

Based on the foregoing, it is hereby

ORDERED that James Leroy Frattarola's petition is DISMISSED with prejudice; it is further

ORDERED that the petitioner's motion for leave to amend (Doc. No. 16) is **DENIED**; and it is

ORDERED that all other pending motions, if any, are **DENIED as MOOT**; and it is

ORDERED that a certificate of appealability is **DENIED**.

The Clerk's Office will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this ___11^TH___ day of August, 2023.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE